Ruffin, C. J.
 

 It has been insisted here, that the instruction was erroneous, at least, in this respect: that as to the excess of the price above the sum of $550, which the plaintiff put at the time into her father’s hands, viz: $122, the conveyance was voluntary from the father to the daughter, and, therefore, void; and, being void in part, is, under the statute, void altogether. But we think the position entirely untenable in reference to this case. The sum of $122 spoken of was as much in the father’s hands, for the purposes of the plaintiff, as that of $550. It was not exactly in the same form, indeed; but it was the same in substance. The larger sum the plaintiff then delivered in cash; the smaller the father before had in his hands, as the money of Dr. Buie, which he transferred as far as it might be needed, to the plaintiff. As soon as the purchase was made, therefore, and Malcom Buie had settled for the price by giving his bond for it, he thereby paid to the plaintiff her advance of $550, and to Dr. Buie the other sum of $122, and the plaintiff became debtor to Dr. Buie therefore, instead of Malcom Buie. It was not material, that the very identical
 
 money,
 
 furnished by
 
 the
 
 plaintiff, should be used in paying the price. It was only requisite that the father should not give the negro to his daughter, or, it may be, any' part of her; and, therefore, it is sufficient, if she furnished
 
 to
 
 the father a fund to pay the price in full, though he may have kept that fund to himself and applied other means, to an equal amount, of his own. He was nothing out of pocket, and, therefore, his creditors had no ground to complain that his property had been covenously conveyed for an inadequate consideration. In thus speaking, it is supposed that the pe-
 
 *174
 
 groes once belonged to Malcom Buie, and that the plaintiff derived her title from or through him. Admitting that to be so, it is plain that he was bound in conscience to convey under these circumstances to the daughter, and that a Court of equity would have compelled him to do so; and therefore it could not be fraudulent in him to do it of his own accord. But the truth is, that the plaintiff did not derive title from her father, and the case was unnecessarily embarrassed by being so considered. Assuming the testimony of the father to be true — and the instruction prayed for so assumes — the title never was in the father. For the purchase was made by him as the agent of his daughter and in her name, and as soon as the purchase money was paid to the vendor (and to that purpose the bond for it was the same as payment) the right of property was in the plaintiff, and the title became complete by the possession received by the daughter,
 
 Woods
 
 v. Fuller, -, decided at this term. When the vendor after-wards made a bill of sale to Malcom Buie, he did what he had no authority to do; for the title was not in him then to convey, but had by the sale and delivery before vested in the plaintiff. There was therefore no ground whatever on which the creditors of Malcom Buie could treat these slaves as his property. They never had been his.
 

 For this last reason, also, the evidence that was rejected was totally immaterial. The object was to show, that the deed from her father to the plaintiff was in fact executed after the
 
 teste
 
 of the execution. If that was so, it would make no difference ; since the plaintiff had title by the original purchase, made before June, 1838, and long before the judgment against the father. But, even supposing that the deed from the father to the plaintiff constituted her title, the evidence was properly ruled out. The remark of the deceased bidder carried the evidence no farther than the testimony of the witness, who said he was uncertain, whether the declaration of M. Buie was, that he conveyed after the original writ issued, or after the teste of the execution. The declaration, simply, of the bystander,
 
 “
 
 then 1 will bid,” does not tend to establish, that
 
 *175
 
 the declaration of Buie was the one or the other; as he might have thought a conveyance after the suit brought evidence of fraud. Indeed, that is most probable ; for as a member of the profession, he must have known, that, if the conveyance was posterior to the execution, the slave was undoubtedly liable on the execution, and he would have offered more than $50, for three slaves. The declaration in truth proved nothing.
 

 Per Curiam, Judgment affirmed.